Next case this morning is United States v. Delgado-Lopez, 19-3113. Good morning. May it please the Court. I'm Kayla Gassman for the appellant Christian Delgado-Lopez. The issue in this case is whether the District Court erred when it denied Mr. Delgado's request for a minor role reduction. The answer is yes, because instead of considering Mr. Delgado's relative culpability or considering the 3B1.2 minor role factors, the District Court instead relied on two improper things, its own speculation about the offense and Mr. Delgado's decision not to participate in a controlled delivery. The first major theme of the District Court's minor role discussion was its own speculation about the financial wisdom of the offense and Mr. Delgado's circumstances. The Court calculated Mr. Delgado's expenses and profit for each trip, compared that to hypothetical jobs that the Court believed Mr. Delgado could have worked, and essentially decided that the offense didn't seem worth it. So the Court speculated that Mr. Delgado might have, quote, had a piece of the action or played a larger role than a courier. The problem is that there's nothing in the record that supports that speculation or those assumptions. Mr. Delgado, at his sworn proffer session where he provided, he provided a fairly detailed description of his role in the offense and his participation as a courier driving drugs from California to Kansas. The government didn't think it was very detailed, did it? I mean, in its sentencing hearing, it didn't take the position that he had offered detailed information. They didn't affirmatively endorse it in terms of getting the safety valve. They just said they weren't going to oppose it, right? The government said that they were unhappy with the level of detail because he was not able to provide, I think, names of additional people, first and last names that the government could investigate, but the government did affirmatively say that they could not establish that he had lied and that they believed he had told the truth sufficient for the safety valve reduction. And wasn't that the theme of the district court's position, that they thought, the district court thought he was lying? The district court's reasons for doubting his credibility was all bound up with this speculation. One of the major reasons why the court didn't believe him or indicated that it might not believe him was because the court thought he could have worked these other hypothetical jobs and made almost as much money, but there's nothing in the record that would support the speculation that he devoted any additional time to trafficking or made any additional money from it. The PSR confirmed that he had had the same full-time job at a retirement community since 2005, and yet the court assumed that Mr. Delgado could easily just work additional hours at that already full-time job or could go find some other job at $10 an hour to fit around that full-time job. And I think there's just nothing in the record that supports the feasibility of those assumptions, and it's that speculative analysis really underpinned the district court's discussion about whether or not he believed that Mr. Delgado was a courier. If the court had determined, based upon his statements, that the court did not perceive the defendant to be credible and therefore believed him to be lying, in other words, it didn't make sense, and then why wouldn't that be a sufficient ground in and of itself to deny the adjustment because the burden is on the defendant to get the adjustment, and the defendant puts forward only his statements and not detailed statements at that, per the government, and the court looks at those statements and says, well, you know what, I don't believe you, and therefore full stop, denial. Why is that error? I think if the court had said only that and we had not pushed back for any additional explanation and that's all we had was the court saying, you know, you haven't persuaded me that this is true, that might be a more difficult case. What we have here is the district court explaining why he decided not to believe Mr. Delgado, and that is shot through with speculation and these assumptions that are unsupported by the record, this idea that he could just easily go out and make $300 doing something else, which I think is just not a real world based assumption, and certainly there's nothing in the record that supports it. Well, why wouldn't it be harmless error then? You said it would make for a tougher case. I mean, is the court worse off because the court spoke than if the court had just said, you know, I just don't believe you, period. I think this court has previously said that there are times when the district court is not obligated to give an extensive explanation, but if it chooses to do so and it says something that's erroneous, then this court has to deal with that. I think it's not harmless because it's not clear to me that if we went back to the district court and the district court conducted an analysis free of this kind of speculation and reliance on cooperation, I don't know that the district court would disbelieve Mr. Delgado again because the reasons that the court did give, I think, are erroneous. So if this case were to go back for the district court to do a correct analysis with correct factors, I don't think the record is clear that the district court would reach the same decision. And I do want to talk about, so I think the Saines case from the Seventh Circuit on this speculation issue was helpful. In that case, it was similar. The sentencing court said it was not going to give a minor role reduction because it believed that the defendant was more than a courier and had a far larger role. And the Seventh Circuit sent it back because it said there's nothing in the record that supports that assumption. I'm also pointing to a couple of other cases where district courts made sentencing decisions based on speculation that a defendant was involved in some kind of undisclosed scheme or some undisclosed offense, the Vann case from the Sixth Circuit, the Bradley case from the Seventh Circuit. And in all those cases, the appellate courts sent those sentences back because sentencing determinations simply cannot rest on this kind of speculation. What is your position on that? And you said it would make it for a tougher case if he disbelieved the defendant on grounds that were not speculative. Number one, courts make credibility determinations all the time, so let's put aside the alleged speculation. The court just said, I'm looking at this situation. I just don't believe it. You're not credible to me, okay, and then makes a credibility finding and dismisses, well, not dismisses, but then denies the adjustment. What would be the problem with that? And I have a two-parter. What would be the problem with that generally, and more specifically, would that remove the court's burden to conduct any sort of guideline commentary factor analysis because there would be no universe of facts, and this is sort of parroting the government's argument in part, but the argument has some plausibility to it. There would be no universe of facts upon which to do such an analysis because you've determined he's just not credible. So the bottom line is, putting aside the speculation issue for a second, and if the court had just said, I don't find you to be a credible witness, therefore I'm not going to give this adjustment because whatever universe of facts you've given me telling me what your role is, and you are the only evidence for that role, I don't believe. It is difficult to put aside the speculation because, of course, the court did speculate here. I think there wouldn't inherently be a problem with a judicial court making a credibility determination, but I think this court has to be sure that that determination rests on appropriate things. There is case law from this court and from other courts supporting that even a credibility finding that rests on speculation or a speculative inference is a clearly erroneous credibility finding. I'm saying there wouldn't have to be anything said. Yes, I thought acknowledged. The court could have just said, I don't believe you. I think if the court had said only that and there was nothing else in the court's discussion and we didn't push for a further explanation and that's all the court had said, I think it would be difficult to raise anything on appeal challenging that. But, of course, that's just not what we have here. We do have the district court giving a fairly extensive explanation that was shot through with this kind of inappropriate speculation. And I do want to talk about the second improper thing. The court did also discuss quite extensively Mr. Delgado's decision not to participate in a controlled delivery when he was arrested as a reason to deny the minor role reduction. I think the record is clear that part of the district court's decision there was that Mr. Delgado simply didn't deserve the break of a minor role reduction that someone who had cooperated might deserve. That's one reading of the record. Yes, it is. Not the only one. Go ahead, please. And I do want to point specifically to the part of the record that I think establishes this, which is on page 31 at volume 3, which is during the sentencing hearing. The court asked whether Mr. Delgado had, quote, offered up any information during his procession, noted that, quote, defendants who want to obtain these sorts of adjustments in their role, I think, sometimes they do step out and they take the risk of assisting with controlled deliveries or providing other information. The court then went on to state that even if it assumed Mr. Delgado didn't actually have any additional information to give, quote, it doesn't seem to me that he ought to get the same kind of break as those who do put themselves at some risk by assisting law enforcement with a controlled delivery. And then the court goes on later to explain what it was saying related to his veracity, his truthfulness. It used his unwillingness to cooperate as an indicator that he may have been more involved than being just a mule, and therefore he was unwilling to cooperate. And that was sort of the theme from the government statement as to why he didn't give details. Why didn't he give details if he was just such a helpless mule who didn't know anything? So I think I have two responses to that. One is I think it's important to look at the sequence of events here also. So the court made the statement about whether Mr. Delgado deserved a break, denied the reduction, went on to discuss a couple of other things, and then subsequently defense counsel came back to the minor role issue and said, you know what, Judge, I don't think it's appropriate for you to rely on the cooperation. And then the judge said, oh, well, to be clear, what I was doing was judging his veracity. And are you doubting that? Is that the way it's supposed to work, if you have some concern about what the judge says, that you raise that objection and the judge has an opportunity to explain? And the judge did exactly that. No, I don't. That's the way it's supposed to work. I don't think there's anything wrong with that, except I think now what we have is two conflicting statements because I don't think that's actually a fair interpretation of what the court said earlier. The court earlier said – The court clarified what it said earlier, right? What are we supposed to do with that? I mean, I didn't really mean that. This is what I mean. Except the court didn't say it didn't really mean that. The court said, like, to be clear, now I'm just using this to judge his veracity. But the earlier statement, I think, was quite clear that it was looking at whether or not Mr. Delgado deserved a break. And the court takes that off the table before the proceeding is over. What basis is that for error? I still think two conflicting statements, I think, don't make a clear record. It's not conflicting, but the court says it doesn't – what I said was not what I meant. So it's not conflicting. But the statement that the court said about whether he deserved the reduction is the statement that he made when he actually denied it and then discussed other things and we came back around to that minor rule, and then the court tried to clear it up, but I just don't think it fully clears up the issue. Do you consider the court incredible and not believe its clarification of what it said? Is that what you're saying? I mean, I just – I think the two conflicting statements are still a problem. And I've pointed the court to a couple of cases, so the Bowen case out of this court and then a case out of, I think, the Ninth Circuit and one from the Seventh Circuit where the same similar sort of thing happened where the district court relied on one inappropriate factor or one inappropriate thing and then also said other things that perhaps were correct or were a more full explanation. And in those cases, the appellate court sent it back saying we can't – How is that an analogous situation? You're talking about two different buckets here. But in this situation, you're talking about one state, one bucket, essentially one construct. And the court says, no, no, no, no, I didn't mean that. This is what I meant. And I mean, it seems to me the system worked exactly the way it's supposed to work in this situation. Good defense counsel says, no, Your Honor, that's improper. You can't do that. All right, well, no, that's not really what I was doing. So I do want to reserve this time, so let me answer this question and then try to reserve the rest of the time. I do maintain that I think the conflicting statements are still a problem because I think it prevents this court from being fully satisfied that the district court considered only correct things and only appropriate factors when it denied the reduction. I will reserve the rest of my time. Thanks. Good morning, Your Honors. James Brown for the United States. Your Honors, in this case, the district court made a credibility finding that the defendant was lying about being a courier. The defendant doesn't dispute that. But the defendant did not acknowledge this credibility finding in his opening brief and the defendant did not challenge that credibility finding in his opening brief. He only mounts a challenge to that credibility finding in his reply brief by saying the credibility finding was based improperly on speculation. An argument not raised in an opening brief and raised in a reply brief for the first time is waived. The defendant has waived any challenge to the district court's credibility finding. I didn't recall that sequencing. In the district court, where did the district court say he lied? The district court said it questioned the veracity of what he was saying. It didn't flat out say he lied. There wasn't any credibility finding to that effect. As far as I recall, where is that? Well, the whole explanation about how the court considered the factors in assessing the veracity of the statement, so that's the credibility finding. Well, just like the government, it wasn't completely sure that he was telling the truth. But that's different than some finding that he lied. Well, no, there was a finding that he lied. The district court, for example, as to each of the three factors the district court relied on, the financial wisdom defense, the district court applied that in the context of assessing his veracity of his statements. The defendant's decision not to do a controlled delivery, the court says it gives me some pause about whether or not I believe he were a courier and how minor a role in this case I think can help. As to the quantity, the court said, the large quantity indicates to me a measure of trust the organization is likely to place in its defendant. Then the court goes on to say, I'm assessing these in the context of the veracity of your statements. So that is a credibility finding. How do we get away from the fact that the district court made a credibility finding that the defendant was lying? That's what the whole sentencing proceeding was about. Well, you just read it to us, and in that there was no express finding that he lied. If it is his burden of proof to get the adjustment and the court says, well, you know, I don't think you proved it by a preponderance that you should get the adjustment and this just doesn't make sense to me. That's not the same as saying somebody's lying. Okay. Then let me try this. Record Volume 3, page 68. The court says, I am not convinced that he's a minor participant because I'm not sure, among other things, whether some of the testimony he's given is truthful, particularly based on some of my thoughts on what he testified or said that he was paid, among other things, as well as the large quantity of drugs that were entrusted to him. I'm not sure he's truthful. Fine. What is this about weight? What is this argument about lack of preservation? In the opening brief, the defendant says he considered improper factors in making his determination, and if in making its conclusion that he lied, the court relied upon improper factors in making that determination, where is the lack of preservation in that? The defendant did not acknowledge that there was a negative credibility finding, and he didn't contest that finding as clearly erroneous. What his argument was is that the district court failed or erred in not applying the 3B1.2 factors and referred to factors that were based on speculation in not applying the 3B1.2 factors. The defendant never argued that the credibility finding was clearly erroneous. The defendant never even acknowledged that credibility finding in his opening brief. Why is it not error to rely upon improper factors in making a determination you otherwise could make? And I will refer you to, I think, our Aragon case, which was not that long ago, in which what happened was the court relied on its own personal knowledge of how much weight packaging is on whatever it was, meth or something like that, to make its determination. The court may well be right, but there was no evidence to that effect. It was its speculation as to what the packaging was. Well, in this situation, the court may well be right, he was lying, but if the court relied on improper factors to make that determination, then why is that okay? Well, number one, we're not sure it's speculation. First of all, it's not okay because the defendant waived that. Okay, what evidence is there in the record as to how many gallons an F-4 Ford 150 takes? All right, so I see the court's point, and it's a very fair point, especially in light of the case that the court cited about the methamphetamine. I remember reading that case. But if the court looks at the record, and I would direct the court to Record Volume 3, page 54. On my brief, it's the first two indented paragraphs on page 6. I mean, the court works off of what the defendant said. He was being paid, so that's not speculation. He was being paid $1,000 a trip. The defendant testified about how much he was paying for a hotel, $150 to $300, about how much he had to pay for a plane ticket. And the court just subtracted his expenses from the amount, his stated expenses from the amount he said he was paying, and then said, well, you had to pay for gas, too. Okay, because he was driving. That's just reality. But there was no evidence about how much gas. There was no evidence about her. The court relied a lot upon what it deemed to be the economic illogic of this transaction. Well, there are two things that are involved in that. One is a premise as to what a defendant would do. Because it was a cost-benefit. How much exposure, criminal exposure you had, how much money you needed to get to make yourself comfortable with that criminal exposure. Well, the defense lawyer below made a pretty good argument, which was, I have a lot of defendants. They have no idea what their criminal exposure would be. Well, was there any evidence that says, oh, well, you know, this is how couriers generally act and this is what they do? No. There wasn't anything like that, was there? No. Okay. And we had a Google map as to how long the trip would take. That wasn't in evidence either. That was the court doing its own work, right? Right. Okay. But let me just draw on that a little bit more. The courts, any error the court made, I mean, it would have only gone to, for example, the mileage and gas. I mean, he was paid $1,000, we know that. He had expenses for gas, motel, and rental car, which he had to pay, which he testified to. The court was just extrapolating based upon what he said. There might have been some wiggle room in the court's estimates. True, that's true. There was probably some wiggle room in the court was going by when the court had an F-150. But it's not, I mean, if he's starting with $1,000 and has to pay for all these other things, the amount by which he's off for the cost of the trip to the defendant or how much he made is not going to be by more than a couple hundred dollars. Let me address what, well, let me say what my concern is, and I want to hear your response to it. My concern, this is not about unlike, in fact, the court's a little better off here than in Aragon because the court actually elicited a lot of these facts from him, as you point out, and so had some sort of factual basis out of the defendant's mouth about a number of these things. There are two things, though. One is, as the defense lawyer points out, part of the whole thing of making this economic logic argument work is, well, he could have had a job. He could have done X, Y, Z. He could have filled the gap, and therefore why would he do this? Well, there's no testimony about any of that, is there? No, there's not. The court said if he just had a job and stayed home, you could have made about the same money. Okay. That's why it didn't make sense to the court. That's the first thing. The second thing goes back to the point I made earlier. You know, one should not, let me ask, why is it appropriate for the court to infer what an average courier would do in their cost-benefit analysis of criminal exposure vis-a-vis money they would have to make? I mean, we have both read enough cases in which people put themselves in jail for a long period of time for very little compensation. So why would that be appropriate? If you're going to make that argument, why wouldn't you put an agent on the stand to say that? Well, it could have been done a different way. We acknowledge that. But we don't think that the speculation the court engaged in really had that much of an effect. I mean, the court's working from $1,000 per trip and then subtracting his expenses and coming up with $270. But it could have been less than $500. The cost-benefit analysis ---- I'm sorry. Go ahead, Mr. Brown. I'm sorry to cut you off. I didn't mean to interrupt the court. The cost-benefit analysis would have been the same. My principle, though, is not unlike the Aragon case. I'm not talking about quantities here. He could have been off on his math. That's not the point. The point is the inference from the math, you know, writ large, the inference was this was a bad deal. And because it was a bad deal, you must have been bigger in the scheme than you were because I can't believe you would do it for this amount of money. Well, what evidence, you know, we're not going to see TV programs about this. Are we supposed to take judicial notice of this, that the court would take judicial notice? You know, I know the average mule would not work for less than $5,000, and you work for $1,000, so there must be something else going on or you can't be telling the truth. Well, keep in mind that that factor, the economic logic of the offense was just one factor. What's the other? The others were the defendant's decision not to do a controlled delivery. The court said that gives me some pause about whether or not I believe you were a courier and how minor a role in this case I think you actually held. And the third one was the quantity of drugs involved. And this court has recognized that in denying a minor role adjustment, the court can look to the quantity of drugs involved as a metric of the defendant's culpability and knowledge of the offense. The cases I recall where we've done that, there's been evidence to that effect. Do you have any case where that was just done sui sponte by the court? I don't deny that that can be a factor. I mean, generally when that's done, you've got some guy on the stand, an agent saying, well, you know, in my experience, when people move drugs, they require a certain amount. They would only trust somebody. That person has to be trusted a certain amount if they have that many drugs. We don't have that here. Well, I don't think we do. The case that I'm referring to is the Esquivel case, 214 Fed APBX, page 806. And what did they have? Was that the court going on its own or was it the court with evidence to that effect? It's the statement is in the opinion, and I don't want to characterize how exactly this court applied it. The court said the district court denied it for this, for this reason, and this was one of the things. The court looked to this factor, the amount of drugs involved, and that played to the defendant's knowledge and culpability. So it's a factor that the district court looked at, and this court said, yeah, that's what the district court looked at as a fine factor. Okay, so that case is in your brief, right? Yes. Okay, well, I'll go back and study that. Okay, so we have that and then we have the non-cooperation and what that says about his veracity. Right, right. We have those three things. Well, did you make a harmless error argument at all? I mean, let's assume for the moment that this economicologic thing is error. We didn't make a harmless error argument because we thought it was crystal clear that the district court made a credibility finding that the defendant did not acknowledge in his opening brief or challenge, based on R3, page 68. And the defendant really just challenges that in his reply brief. That's it. So we think that his failure to challenge the credibility finding ended the case. Well, then let me tease that out a bit. Okay, there is a credibility finding, and, again, I'm a little skeptical that that, in fact, was a credibility finding, but let's assume it is, that the defendant lied. It didn't stop there. And if the defendant says, you use improper factors in imposing a sentence on me, okay, well, why isn't that preserving the argument that the adjustment that you denied me was predicated on improper factors, which would include the fact that the court found he lied? Well, we see the point the court is making, and it's a fair point, but the problem is the defendant has a burden. In his opening brief, he has a burden to identify the issue and then contest the issue in a specific way. Here, his argument was that the district court's considering these things was error because the court did not apply the 3B1.2 factors. It was all related to the district court's failure to apply the 3B1.2 factors. The defendant didn't even acknowledge the credibility finding. He did not challenge the credibility finding. He does so for the first time on appeal. And, once again, we think that the district court talked about his credibility at length. We go through the district court's talking about his credibility. We bolded in the brief. The district court talked about it at length. The district court made this final finding. I'm not convinced he's a minor participant because I'm not sure, among other things, whether some of the testimony he's given is truthful. There's no way to look at that other than that being a credibility finding. That's at least how we looked at it. Okay, that's how you looked at it. But, okay, correct me if I'm wrong on this. Okay, let's assume for the moment that, in their opening brief, they say, you know, the court didn't consider the commentary factors or the guidelines. Instead, it relied on all this speculative stuff. Okay. In your reply brief, you're the one who says that, you know, the court found that he lied, and because he lied, I mean your response would be he lied, and because he lied, because the court found he lied, full stop, the court didn't have to consider the commentary. Well, they're still saying he relied on improper stuff in doing the adjustment. Yes. Why is that? What's wrong with that? You could still end up in the same place. They're saying the reliance was improper because those factors didn't have anything to do with the 3B1.2 analysis, the 3B1.2 factors. The error that they identify is with the district court's failure to apply the 3B1.2 factors. They didn't acknowledge the credibility finding and didn't even discuss it. They acted like it didn't even happen on the record. But the testimony is there. We quote it at length in bold in our brief. There's no way to get around it. And then in their reply, they do see it. They see it for the first time, and then they talk about it. You characterize the argument in your response brief as one that if you don't address the credibility finding, you lose. And they address the credibility finding and say you relied upon improper factors, and so it doesn't, you know, whether you found he lied or not doesn't matter. It was too late by then. They raised it for the first time in the reply. So it's waived. There's no way to get around it. Well, I take that back. I'll take that back. I'm glad I had the confidence you did in life. It would be great. But, okay, got it. I want to end on a good note. I take that back. Thank you very much for your patience. Appreciate the time. Let me try to just make a few points. I'm puzzled by this preservation argument. Our argument all along in the district court and here has been the district court inappropriately relied on speculation in this cooperation. I think we have maintained that argument. That was our argument in the opening brief and in the reply. Well, I'll clarify what I think is what the issue is. The issue is it's one thing to say improper factors juxtaposed towards the guidelines commentary. It's another thing to say that even if you found that I didn't have veracity, you did it for improper reasons. Two different arguments. I understand that, but I also think on this record the district court's discussion of credibility and veracity is very inextricably bound up with these speculation issues and cooperation. So I don't think the district court did make clear credibility findings. The court said things like things give me pause. This raises questions for me. But the basis of those conclusions was this kind of speculation and cooperation that I argue is inappropriate. I also think it's just completely not supported by the record to argue that the district court's speculation about the finances played no role in its credibility decision or that it would have reached the same conclusion without the speculation. Even if we say the district court's financial speculation was off by a couple hundred dollars, what the district court said was, you know what, you only made $300. You could have worked these other jobs. You would have made the same amount. There's no benefit. Well, I think without the speculation, maybe the district court was off by $200. There's also no evidence in the record about that he could easily go get these other jobs and make the same amount of money. So where we are is maybe he made $500 and could not easily go get these other jobs. I think that is a very huge difference between the district court saying there's no benefit to you and the district court saying there's maybe a $500 benefit to you. What about the argument that the amount of drugs in itself would have allowed the court to find as a relevant factor that he must not have been telling the truth because he wouldn't have been trusted with that amount of drugs if he was so low on the totem pole? I don't think there's any case law from this court or any other court that says the amount of drugs alone can be a reason to deny the minor rule determination. I do agree judges have considered that in connection with other factors. The Esquivel case, the court also made several findings that the defendant in that case lied about multiple things. And the court said there were actually proof that he lied. And then the court separately dealt with this issue of the amount of drugs and had a discussion and said that can be a factor that can relate to the defendant's knowledge about an offense. But I don't think that case supports that that can be the only factor. I also think it's unfair to find that a criminal defendant who left high school after the 10th grade with a .5 GPA who was in financial straits and a chronic marijuana smoker might not have made the same most rational decision that the district court said. I don't think there's any support for finding that that's a reason why he cannot be believed. We would ask the court to vacate and remain. Thank you. Thank you, counsel, for your argument.